William T. Collins, S.
The questions presented by the petition of the accounting executor are determined as follows:
(1) The legacies in the third paragraph of the will are specific legacies. (Matter of Hicks, 272 App. Div. 594, 597, affd. 297 N. Y. 924.) A specific gift of shares of stock carries with it all dividends deeming on such stock after the testator’s death. (Matter of Security Trust Co., 221 N. Y. 213; Matter of Lozier, 191 Misc. 263, 265; Matter of Lamborn, 171 Misc. 734, 736; 4 Page on Wills, p. 556.) No question seems to be raised here as to the time of accrual of any dividend. On that assumption, the dividends reported by the executor in Schedule L are payable to the specific legatees, less any taxes which might be properly attributable thereto. There is no objection to the amount of taxes stated in Schedule L.
(2) One of the assets remaining in the hands of the executor is a right to receive the three final installments under a contract of sale made by the decedent. The executor proposes to deliver to the residuary legatees assignments of rights to future payments under the contract. He also proposes to distribute pro rata the shares of stock of a corporation and bonds which remain on hand.
A legacy is ordinarily payable in cash, but any form of payment which is acceptable to the legatee will discharge the executor’s obligation. If the legatee chooses to take securities or assets other than money, that is a matter between him and the executor. (Camp v. Smith, 49 Hun 100, 105, affd. 117 N. Y. 354; Villard v. Villard, 219 N. Y. 482, 500.) Section 268 of the Surrogate’s Court Act expressly authorizes a fiduciary to make a distribution in kind where all interested parties ‘ ‘ manifest their consent thereto by a writing filed in the surrogate’s office ” (subd. 1), and also in other circumstances not pertinent here. In such distributions, the value of the property distributed must be fixed by consent or appraisal.
The will of this testatrix expressly authorizes the executor to make distributions to the residuary legatees “ in cash or in *389 kind.” Such a grant of power is, of course, limited to the extent that it cannot he construed as granting him the power “ to make a binding and conclusive fixation of the value of any asset for purposes of distribution, allocation or otherwise.” (Decedent Estate Law, § 125, subd. 2.) Such power is limited also by the obligation of the executor to deal fairly and equitably with all legatees. (Matter of James, 86 N. Y. S. 2d 78, 89.) If distributions are made pro rata so that each legatee receives his proportionate share of each item, no question of value or appraisal can be presented. Where, however, the property and the estate finances do not permit prorata distribution but require allocation of different assets or different portions to various beneficiaries, the valuation of the various assets becomes important.
The petitioner does not indicate how he proposes to distribute the contract rights and other assets. At this point, he probably cannot figure precisely the distributions. No objection to the method of distribution is made by any of the residuary legatees. Some of them expressly consent. In the absence of objections, the court will authorize distribution of the assets in kind. Approval of the actual plan of distribution must be reserved for determination upon the settlement of the decree.
(3) The court is asked to say that the net residuary estate has a value of less than $320,000 and that, therefore, paragraph fifth of the will is inoperative. While the values shown in Schedule H of the account tend to support petitioner’s allegation of values, the item of greatest value consists of shares of stock in a single corporation and there is no basis for the court to place a valuation thereon. Moreover, in view of an objection to the account, hereinafter discussed, an issue of fact may be raised in respect of asset valuations. Disposition of this question must be reserved until decision on the objection.
(4) The executor has chosen the correct method of computing the residuary estate and carrying out the mandate of paragraph sixth of the will. (Matter of Cordier, 168 Misc. 577; Matter of German, 107 N. Y. S. 2d 411, 413.) The sum of $30,000 is to be added to the residue, the aggregate sum divided as directed in the will and the sum of $30,000 subtracted from the share of Louise Eider.
(5) In the seventh paragraph the testatrix disposed of “ all of my personal belongings, including articles of clothing, jewelry, books, art objects and other personal effects that I may own.” The residuary clause expressly excepted ‘ ‘ personal effects hereinafter bequeathed.” The term “personal belongings” and the term “ personal effects ” have no fixed technical meanings. The meaning will vary with the setting. (Matter of Maurer, *390 192 Misc. 627, 628; Matter of Michaelson, 194 Misc. 525, 526.) The word ‘1 personal ’ ’ is sometimes said to qualify the term and to restrict the gift to articles having an intimate relation to the person. (Matter of Maurer, supra; Matter of Wildenstein, 204 Misc. 248, 249.) Here, however, the decedent’s enumeration of some of the included articles clearly shows that she did not intend to limit the gift to articles worn upon her person or used personally by her.
The executor asks whether the gift under this paragraph of the will includes household furnishings and ‘ household effects. ’ ’ The last part of the inquiry has the same lack of clarity as the text it seeks to have construed. The executor construes the text as including household furniture and effects and no one offers any different construction of the will.
The term “ personal effects ” has been construed to include household furniture. (Matter of Loeb, 155 Misc. 863, 865; Matter of Gault, 48 N. Y. S. 2d 928; Matter of Glover, N. Y. L. J., Jan. 3, 1951, p. 26, col. 3.) The testatrix has specified the more valuable of her “ personal belongings ”, such as art objects and jewelry, and probably meant the words “ other personal effects ” to include the property ordinarily used by her. The text of the will is sufficiently broad to encompass household furniture, and the court so construes the will.
(6) There is objection to the reservation of $10,000 to meet possible tax deficiencies and expenses. There is nothing in the record to enable the court to determine the reasonableness of such request and the amount of the reservation will accordingly be reserved for determination after further proof on the hearing or on the settlement of the decree.
(7) All questions relating to the executor’s commissions will be reserved until the settlement of the decree.
Objections to the account having been filed, this matter is placed upon my calendar for hearing on the 12th day of April, 1956 at 10:30 a.m.
Proceed accordingly.